867 A.2d 666 (2005)
PITTSBURGH FIRE FIGHTERS, LOCAL NO. 1, by and through its Trustee Ad Litem, Pittsburgh Fire Fighters President Joseph KING; and Joseph King, in his capacity as a resident and taxpayer of the City of Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania, Petitioners,
v.
Dennis YABLONSKY, in his capacity as Secretary, Commonwealth of Pennsylvania, Department of Community and Economic Development; Commonwealth of Pennsylvania, Department of Community and Economic Development; Public Financial Management; Eckert Seamans Cherin & Mellott L.L.C.; City of Pittsburgh; The Honorable Tom Murphy, in his capacity as Mayor of the City of Pittsburgh, Respondents.
Commonwealth Court of Pennsylvania.
Argued December 8, 2004.
Decided January 25, 2005.
*668 Joshua M. Bloom, Pittsburgh, for petitioners.
Clifford B. Levine and Susan E. Malie, Pittsburgh, for respondents.
BEFORE: COLINS, President Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.
OPINION BY President Judge COLINS.
Before the Court are the respondents' preliminary objections to the Second Amended Complaint filed by the Pittsburgh Fire Fighters, Local No. 1 (Fire Fighters).
Before addressing the preliminary objections we present the following factual and procedural background. On November 7, 2003, Mayor Murphy filed a request with the Secretary of the Department of Community and Economic Development seeking a determination that the City of Pittsburgh is financially distressed under the Municipalities Financial Recovery Act (Act 47), Act of July 10, 1987, P.L. 246, as amended, 53 P.S. §§ 11701.101  11701.501. Designation as a financially distressed municipality enables such entities to apply for special financial grants to aid in recovery from such financial condition. Once the Secretary receives a request he must make a determination as to whether the municipality is distressed. Before conducting a required public hearing on the issue, the Secretary may initiate an investigation into the status of the municipality. In this case, the Secretary retained respondent Public Financial Management (PFM) to assist in the evaluation of the City. Section 203(c) of Act 47, 53 P.S. § 11701.203(c), provides that such results become part of the record of the public hearing.
In this case the Secretary determined that the City was financially distressed, and in accordance with Section 221 the Secretary appointed PFM and respondent Eckert Seamans as joint coordinators (coordinator) to prepare recovery plan for the City. The coordinator filed a preliminary Plan with the City on May 26, 2004. Following a public comment period, which included a public meeting, and subsequent revisions to the Plan, the coordinator filed the final recovery Plan with the City on June 11, 2004.
The Plan included various provisions relating to the terms of agreements between the City and the Fire Fighters labor union to be included in any collective bargaining agreement between those parties. Although Act 47 precludes any plan from interfering with the terms of an existing collective bargaining agreement, the Act allows a coordinator to include in a recovery plan recommendations proposing changes to collective bargaining agreements that could alleviate a municipality's financial distress. Section 242(3), 53 P.S. § 11701.242(3). Further, once a plan is adopted, no collective bargaining agreement adopted thereafter may "violate, expand or diminish" the plan's provisions. Section 252 of the Act, 53 P.S. § 11701.252.
The Fire Fighters' present agreement is not set to expire until December 31, 2005; however, the Fire Fighters and the City agreed to "reopen" the agreement effective January 1, 2004 on the issues of wages, healthcare for active employees, and several other issues. The parties have exchanged proposals, but according to the respondents' memorandum they are still in negotiations. Under Section 4 of the Act of June 24, 1968 (Act 111), P.L. 237, No. 111, as amended, 43 P.S. § 217.4, which *669 sets forth the collective bargaining process for fire fighter unions, if the parties cannot agree, an impasse will be declared and they will have to submit their differences to arbitration.
The City Council officially adopted the Plan as Ordinance No. 10 on June 29, 2004. Hence, provisions contained therein may have an impact on the negotiations between the parties in seeking to come to terms in a collective bargaining agreement.

1. The Complaint
The complaint seeks a declaratory judgment that Section 252 Act 47, Act of July 10, 1987, P.L. 246, 53 P.S. §§ 11701.101  11701.501 does not apply to arbitration awards under Act 111, does not preclude Act 111 awards from affecting provisions in an Act 47 recovery plan, and that any provisions in the Plan the City adopted pursuant to Act 47 that violate or diminish the Fire Fighters' rights under Act 111 are null and void (Count I); that the coordinator exceeded its authority by including in the Plan provisions reorganizing the Pittsburgh Fire Bureau, and that such provisions are contrary to law, thereby rendering the provisions in the Plan relating to reorganization of the City's Fire Bureau unlawful (Count II); that the inclusion in the Plan of provisions limiting the subjects over which the City and the Fire Fighters may bargain, thus eliminating the opportunity for the parties to select their own means of accomplishing the Plan's financial goals for cost reduction, and those provisions that eliminate the right to bargain over subjects that are not relevant to the financial distress of the City, violates the law and are invalid as beyond the authority of the coordinator (Count III); that numerous provisions in the Plan, pertaining to the organization of the Bureau and cuts in staffing are invalid and contrary to the law (Count IV); that the Plan is invalid because it is the result of violations of the State Adverse Interest Act (SAIA), Act of July 19, 1957, P.L. 1017, as amended, 71 P.S. §§ 776.1  776.8 (Count V); that provisions adopted in purported reliance upon Section 241 of Act 47 effect an unlawful impairment of contracts in violation of the Home Rule Charter and Optional Plans Law, and the United States and Pennsylvania Constitutions (Count VI); and that the coordinator unlawfully delegated his duties under Act 47 to the Mayor of Pittsburgh with regard to the formulation and implementation of the Plan, such that the Court should void any provisions of the Plan relating to the Fire Bureau (Count VII).

2. The Preliminary Objections
The preliminary objections challenge Counts I, II, III, IV, VI, and VII for failure to state a claim against the following respondents: the Secretary of DCED, DCED, PFM, and Eckert Seamans; failure to state a cause of action in Count V under the SAIA; lack of ripeness as to Counts I, III, IV, and VI; failure to state a claim against any respondent for improper delegation in Count VII; failure to state a claim, lack of ripeness, and improper jurisdiction regarding the claim in Count II that the Plan improperly includes reorganization provisions; and lack of jurisdiction.

a. Failure to State a Claim against the Secretary, DCED, PFM, and Eckert Seamans
We address first the respondents' objection for failure to state a claim against the Secretary, DCED, PFM, and Eckert Seamans in Counts I, II, III, IV, VI, and VII. The respondents, relying upon the Supreme Court's decision in Wilkinsburg Police Officers Association v. Commonwealth, 535 Pa. 425, 636 A.2d 134 (1993), *670 argue that the claim fails because these non-City respondents did not enact the Plan. In Wilkinsburg, the Court held that a declaratory judgment action did not lie against the Commonwealth under Act 47 for a claim alleging that that municipality's recovery plan violated the provisions of the association's collective bargaining agreement. The Court agreed with this Court's earlier conclusion that no cause of action existed because Act 47 did not unconstitutionally delegate fiscal decision making authority, but rather left such authority with the municipality.
The Fire Fighters contend that Wilkinsburg is not applicable, arguing that the question of whether these defendants were involved in the enactment of the Plan is irrelevant to the cause of action. Rather, the Fire Fighters argue, the claims are addressed to the "formulation, preparation, and administration" of the Plan.
However, in Fraternal Order of Police, Fort Pitt Lodge No. 1 v. Yablonsky, (FOP), 867 A.2d 658 (Pa.Cmwlth. No. 443 M.D.2004, filed January 25, 2005), this Court addressed claims similar to those presented in this case, involving the same respondents, and arising from concerns about the impact of the Plan on the collective bargaining process between the Fraternal Order of Police and the City. As in that case, the underlying claims here concern the impact of the Plan on the bargaining process. Although the Fire Fighters are correct in asserting that these respondents were involved in the formation of the Plan, the Plan had no efficacy until the City adopted it, and the City was not required to adopt the plan. As noted above, the City could have developed its own plan. The crux of the claims in both this and the FOP case concerns the interplay between the collective bargaining and arbitration process provided under Act 111 and the Plan. In FOP, we held that the claims failed to state a cause of action against these respondents because the City retained decision-making authority. We further concluded that the administrative remedy of arbitration, with appeal to the common pleas court provided an adequate avenue to challenge the effect of the Plan on the ultimate award of an arbitrator. In accordance with our conclusions in FOP, we sustain the respondents' preliminary objection for failure to state a claim in Counts I, II, III, IV, VI, and VII against these non-City respondents.

b. Improper Delegation to the City
The Fire Fighters contend In Count VII that the Plan is invalid, alleging that the coordinator improperly delegated to the Mayor and City officials the task of preparing the Plan, thus violating the language of Act 47, which directs that the coordinator shall formulate and administer a plan. The respondents answer that part of the coordinator's role requires it to accept comments and suggestions. While the Act does rest the responsibility for the ultimate plan with a coordinator, there is nothing in Act that precludes the coordinator from receiving recommendations from others. The inclusion of provisions for public hearings supports that view. Section 242(c), (e), 53 P.S. § 11701.242(c), (e); Section 243(a), 53 P.S. § 11701.243. Even if the Fire Fighters' averment that the City was responsible for developing the provisions pertaining to the Fire Bureau that the Coordinator included in the proposed recovery plan, we cannot agree that that Plan in itself violates the language of Act 47. Accordingly, we sustain this objection to Count VII.

c. Lack of Actual Controversy
We now address the objections relating to Counts I, III, IV, and VI for failure to raise an actual controversy such that *671 would enable the Court to grant relief under the Declaratory Judgment Act, 42 Pa.C.S. §§ 7501-7541. Respondents contend that, until the collective bargaining and arbitration process is complete, there is no way to know if the Plan will have an adverse impact upon the Fire Fighters. We agree.
As noted above, Count I of the Complaint seeks clarification as to the interrelationship between Act 47 and Act 111. The Fire Fighters argue that the indefinite application of Act 47 to Act 111 creates a current, ripe controversy that must be resolved before arbitration can commence.[1] However, as we concluded in FOP the arbitration process is subject to review by the trial courts and then this Court. The decisions in FOP Lodge No. 19 v. City of Chester, 845 A.2d 230 (Pa.Cmwlth.2004), and Farrell indicate that the courts can and do address the interplay between Act 47 and Act 111 in appeals from arbitration awards.
The Fire Fighters argue that if the General Assembly intended for Section 252 of Act 47 to apply to Act 111 determinations, the result would be that any award that violated a provision of an existing Act 47 Plan would not be final and binding, as provided in Section 7 of Act 111. Thus, the Fire Fighters argue that, by interpreting Section 252 to apply to Act 111, we are concluding that Section 252 effected an implied repeal of Section 7 of Act 111. However, at this point there is neither an agreement nor a determination that we can consider in this context. Further, even if the Fire Fighters were correct in their analysis, we believe that the administrative remedy available in an arbitration proceeding would provide an adequate means of challenging this issue.
The Fire Fighters contend that, because Section 252 of Act 47 uses the term "arbitration settlement," rather than "arbitration determination," the General Assembly did not intend for Section 252 of Act 47 to apply to Act 111. The Fire Fighters contend that because the General Assembly provided for a clear distinction between arbitration settlements and arbitration determinations in Act 111, we should conclude that the use of the phrase "arbitration settlement" in Section 252 of Act 47 means that the legislature only intended that only arbitration settlements, as described in Act 111, should not "violate, expand or diminish" a plan's provisions. However, although the legislature did use the term "arbitration settlement" rather than "determination" as used in Act 111, Section 252 refers to both collective bargaining agreements and arbitration settlements. Because Act 111 describes the collective bargaining process as including the entering into settlements by way of written agreement, and arbitration determinations as a last resort, we believe the General Assembly, in referring to collective bargaining agreements or arbitration settlements in Act 47, was referring to arbitration awards, whether it used the word settlement or determination.
In Counts III and IV, the Fire Fighters generally contend that the provisions of the Plan (1) improperly prevent negotiation over terms of employment that Act 111 leaves to the bargaining parties and (2) improperly address the organization of the Bureau and staffing cuts. Because the Plan precludes the Fire Fighters from even negotiating certain terms, they argue that the Plan presents a current and actual controversy. The Fire Fighters, like the *672 petitioner in FOP, argue that, while Act 47 permits a coordinator to include provisions in a plan that impose some limits as to the ultimate award, the bargaining process itself should provide the parties with the opportunity to engage in negotiations as to how the bargaining unit and City accomplish the financial goals set forth in the Plan. As we noted in FOP, the administrative remedy of arbitration, and appeals therefrom, offer an adequate means to present these concerns.
The Fire Fighters argue that resolution of the issues in declaratory judgment is appropriate because an arbitrator who feels compelled to confine his award to the terms of the Plan may not mention the Act in the award, and the failure to mention the Plan may preclude consideration on appeal of the legality of the Plan's impact on the award. However, at present there is no way to know whether the Plan will have such effect. Accordingly, we conclude that the controversy is not ripe and therefore not justiciable. Further, an appeal to the common pleas court from an Act 111 arbitration award would provide the parties with an adequate remedy. Although Act 47 places limitations on the bargaining rights of parties, Act 111 still controls the procedure for resolution of bargaining disputes. Although there is reason to believe that the parties would not be able to reach an agreement in light of the provisions of the Plan, we have no definite way to know that this will be the outcome of the bargaining and arbitration. Act 111 sets forth the rights that unions such as the Fire Fighters have in the bargaining process; however, as a matter of legislative, rather than constitutional grace, the General Assembly may limit or contract the rights it has bestowed. Plans developed pursuant to Act 47 represent such a limitation.
Defendants rely on several arguments to support their preliminary objection to Count VI, which raises a claim that provisions in the Plan that will affect pension and leave rights constitute an unconstitutional impairment of contract. Most notable is the fact that the Complaint pleads no facts that allege a present taking from any union member. Accordingly, we cannot agree that the alleged prospective interference with rights the members presently enjoy presents an actual controversy at this time.
For these reasons and those stated in our decision in the FOP case, we conclude that the Fire Fighters have presented no justiciable controversy in Counts I, III, IV, and VI.

d. Jurisdiction
As to the respondents' challenge to the Court's jurisdiction to consider challenges to the Plan under Counts I, II, III, VI, and VII, we agree that the common pleas court has jurisdiction. Under Act 111, the Fire Fighters will have an opportunity to have that court consider the claims regarding the arbitration process only after arbitration has been completed. See FOP.

e. Failure to State a Claim and Lack of Jurisdiction as to Count II
We now consider the objections to Count II asserting failure to state a claim and lack of jurisdiction regarding the Plan's recommendations for Fire Bureau reorganization. The respondents contend that (1) the City has the power to effectuate changes within the Bureau pursuant to the adopted Plan that are not precluded under the Home Rule Charter, which specifically allows the City to reduce its police or firefighting force; (2) as municipal legislation, the Plan, adopted by the City as Ordinance No. 10, is accorded a presumption of validity; and (3) common pleas courts have jurisdiction over challenges to *673 municipal ordinances. Based upon the apparently unchallenged adoption by the City of the Plan-ordinance, and the City's inherent power to authorize changes in the organization and the size of the firefighter force, we sustain the respondents' objection.

f. Claims Under the SAIA
The defendants also object to Count V of the Complaint, which raises a claim under the State Adverse Interest Act, (SAIA). Section 3 of the SAIA provides that:
No State advisor or State consultant having recommended to the State agency which he serves, either the making of a contract or a course of action of which the making of a contract is an express or implied part, shall at any time thereafter, have an adverse interest in such contract.
71 P.S. § 776.3.
The Fire Fighters' claims under the SAIA suggest that the respondents acted improperly because PFM, which had conducted the pre-distressed status investigation for the Secretary ultimately obtained the contract to act as coordinator. However, we conclude this Count fails to state a claim.
Under Act 47, the Secretary must do more than simply conduct an investigation. Act 47 provides that information or reports conducted pursuant to the Secretary's authority become part of the record of the public hearing. Section 203(c), 53 P.S. § 11701.203(c). Hence, such information becomes only a part of the total evidentiary record the Secretary considers in making a determination of financially distressed status. Section 203(c), 53 P.S. § 11701.203(c). Neither this section nor any other provides that the information provided constitutes a recommendation. Following the issuance of the Secretary's determination, an aggrieved party has the right under Section 203(g) of Act 47 to appeal. We agree with the respondents that the study PFM conducted did not make a recommendation within the meaning of the SAIA. We also agree that Eckert Seamans made no recommendation to the Secretary or DCED.
Further, the SAIA has no provision for the type of declaratory relief that the FOP seeks here. Neither the Secretary nor the DCED is a state advisor or state consultant under the definitions in the SAIA. As the respondents point out, the City adopted the plan as an ordinance, but the FOP has not alleged that the City violated the SAIA.
In summary, because the PFM did not make a recommendation to the Secretary that expressly or impliedly included a contract, the SAIA is simply not applicable to the defendants named in Count V, and therefore, the objection to Count V is sustained.

g. Jurisdiction
Finally, we agree with the respondents that, because the Fire Fighters cannot state a claim against the Secretary or the DCED under any of the Counts, they cannot seek to have this Court address the merits of the Complaints with regard to the other defendants under 42 Pa.C.S. § 761(a)(1).
In summary, we sustain the defendants' preliminary objections in their entirety, and dismiss the Complaint.
Judge McGINLEY did not participate in this decision.

ORDER
AND NOW, this 25th day of January 2005, the preliminary objections filed by *674 the respondents are sustained. The Complaint is dismissed.
NOTES
[1] The Fire Fighters indicate that the City has refused to negotiate, that arbitration is inevitable, and that they have filed an unfair labor practice action against the City that is pending before the Pennsylvania Labor Relations Board.