**BOROUGH OF GREENVILLE,**
Appellant

v.

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 1976.**

**Borough of Greenville**

v.

**International Association of Firefighters Local 1976, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 13, 2008.

Decided April 22, 2008.

Publication Ordered June 25, 2008.

W. Timothy Barry, Canonsburg, for appellant, Borough of Greenville.

Richard G. Poulson, Philadelphia, for appellee, International Association of Firefighters Local 1976.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Before this court are the consolidated appeals from the March 27, 2007, order of the Court of Common Pleas of Mercer County (trial court) granting in part and denying in part the Borough of Greenville's (Greenville) petition to vacate and/or modify an interest arbitration award rendered pursuant to what is commonly known as Act 111.[1]

On May 8, 2002, the Secretary of the Department of Community and Economic Development declared Greenville to be a financially distressed municipality pursuant to the Municipalities Financial Recovery Act (Act 47).[2] A Recovery Plan, dated December 27, 2002, was approved by Greenville on January 9, 2003, pursuant to section 245 of Act 47, 53 P.S. § 11701.245.

At the time the Recovery Plan was approved, there was a collective bargaining agreement (CBA) between Greenville and the International Association of Firefighters Local 1976 (Local 1976), which acts as the exclusive bargaining representative for all firefighters employed by Greenville. The CBA expired on December 31, 2005, and Greenville and Local 1976 participated in bargaining negotiations pursuant to Act 111, but were unable to reach an agreement. Thereafter, the parties requested that the matter be referred to arbitration proceedings pursuant to Act 111, and the

Board of Arbitrators issued an arbitration award (Award) on August 28, 2006.

Thereafter, Greenville filed a petition with the trial court to vacate and/or modify the Award to conform to Act 47. Greenville argued that the Award violates several provisions in the Recovery Plan and, thus, is unlawful under a strict reading of section 252 of Act 47, which states that "[a] collective bargaining agreement or arbitration settlement executed after the adoption of a [Recovery P]lan *shall not* in any manner violate, expand or diminish its provisions." 53 P.S. § 11701.252 (emphasis added).

In ruling on Greenville's petition, the trial court first held that the word "shall" in section 252 of Act 47 must be construed as mandatory, reasoning that to interpret "shall" as merely permissive would run counter to the legislative intent behind Act 47, as stated in section 102(b),[3] and would conflict with section 249 of Act 47.[4] Accordingly, the trial court properly concluded that any Award provisions that violate

---

1. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10.

2. Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101–11701.501.

3. Legislative intent with respect to Act 47 is expressly addressed in section 102(b), which provides, in relevant part:
   **(b) Legislative intent.—**
   (1) It is the intent of the General Assembly to:
   (i) Enact procedures and provide powers and guidelines to ensure fiscal integrity of municipalities while *leaving principal responsibility for conducting the governmental affairs of a municipality, including choosing the priorities for and manner of expenditures based on available revenues, to the charge of its elected officials,* consistent with the public policy set forth in this section.
   53 P.S. § 11701.102(b) (emphasis added). The trial court determined that a permissive interpretation of section 252 would undermine the stated intent of Act 47 to place

principal responsibility for conducting governmental affairs with elected municipal officers because it would mean that the municipality's power to choose "the priorities for and manner of expenditures" would be shared with Act 111 arbiters.

4. Section 249 of Act 47, which deals with amendments to a recovery plan, provides that such an amendment may be initiated by the coordinator, the chief executive officer or the governing body of a municipality and, further, that adoption of an amendment shall be done by ordinance. 53 P.S. § 11701.249. The trial court concluded that a permissive interpretation of section 252 would conflict with section 249, reasoning that, if Act 111 arbiters are permitted to disregard provisions of a recovery plan, they would essentially have the power to amend that plan even though amendments are only permitted to be initiated by the coordinator, the chief executive officer or the governing body and only by ordinance.

any provision of Greenville's Recovery Plan must be stricken or modified as being in excess of the arbitrator's power.[5]

The trial court then went on to consider Greenville's contention that: section 2 of the Award violates section 167 of the Recovery Plan; section 4 of the Award violates sections 164 and/or 179 of the Recovery Plan; and section 14 of the Award violates section 173 of the Recovery Plan. After comparing the relevant Award and Recovery Plan sections, the trial court concluded that section 2 of the Award violates section 167 of the Recovery Plan in five ways; however, the trial court determined that sections 4 and 14 of the Award do not violate any provisions of the Recovery Plan. Accordingly, the trial court issued an order granting Greenville's petition to the extent that section 2 of the Award was modified to comply with the Recovery Plan and section 252 of Act 47; in all other respects, the trial court denied the petition and affirmed the Award.

Greenville and Local 1976 have filed appeals with this court from the trial court's order. Greenville would have this court issue an order that: (1) affirms that portion of the trial court's decision concerning section 2 of the Award; (2) amends section 4 of the Award; and (3) vacates section 14 of the Award. Local 1976 would have this court: (1) affirm that portion of the trial court's decision concerning sections 4 and 14 of the Award; (2) reverse that portion of the trial court's decision concerning section 2 of the Award; and (3) direct Green-

ville to comply with all provisions of the Award.

We have carefully considered the positions set forth by each party. However, finding no error in the trial court's analysis of the relevant issues and arguments, we now affirm the trial court's order in its entirety based on the well-reasoned opinion of Judge Thomas R. Dobson in *Borough of Greenville v. International Association of Firefighters Local 1976,* (No. 2006–3194, filed March 27, 2007).

### ORDER

AND NOW, this 22nd day of April, 2008, the order of the Court of Common Pleas of Mercer County is hereby affirmed on the basis of the opinion issued by the court in *Borough of Greenville v. International Association of Firefighters Local 1976,* (No. 2006–3194, filed March 27, 2007).

## CONCURRING AND DISSENTING OPINION BY Judge LEAVITT.

The majority adopts the reasoning of the trial court in its entirety, thereby holding that only Section 2 of the interest arbitration award (Award) violates Greenville's Act 47 Recovery Plan. While I agree with that part of the trial court's decision, I disagree with the trial court's interpretation of Sections 4 and 14 of the Award as consistent with the Recovery Plan. Therefore, I must respectfully dissent.

As noted by the majority, Section 252 of Act 47 states that "[a] collective bargaining agreement or arbitration settlement executed after the adoption of a [financial recovery] plan shall not in any manner

---

5. The scope of review of an Act 111 arbitration award is limited to four things: "(1) jurisdiction of the arbitrator; (2) regularity of the proceedings; (3) excess of the arbitrator's powers; or (4) deprivation of constitutional

rights." *City of Scranton v. E.B. Jermyn Lodge No. 2 of the Fraternal Order of Police,* 903 A.2d 129, 133 (Pa.Cmwlth.2006), *appeal denied,* 591 Pa. 717, 919 A.2d 959 (2007).

violate, expand or diminish [the financial recovery plan's] provisions." 53 P.S. § 11701.252. This Court has previously interpreted Section 252 of Act 47 to mean that once a recovery plan is adopted, no collective bargaining agreement adopted thereafter may be inconsistent with the recovery plan's provisions. *Pittsburgh Fire Fighters, Local No. 1 v. Yablonsky,* 867 A.2d 666, 668 (Pa.Cmwlth.2005). In the context of an Act 111 bargaining dispute, this Court has explained the operation of Section 252 of Act 47 as follows:

> Although Act 47 places limitations on the bargaining rights of parties, Act 111 still controls the procedure for resolution of bargaining disputes.... Act 111 sets forth the rights that unions ... have in the bargaining process; however, as a matter of legislative, rather than constitutional grace, the General Assembly may limit or contract the rights it has bestowed. Plans developed pursuant to Act 47 represent such a limitation.

*Id.* at 672. In short, any provision of an arbitration award that violates a provision of an Act 47 recovery plan must be stricken or modified to conform with the plan.

I agree with Greenville that Section 4 of the Award must be stricken or modified because it is inconsistent with Section 164 of the Recovery Plan.[1] Section 4 of the Award provides, in pertinent part, as follows:

> Longevity—The current longevity pay scale shall remain in effect for all Firefighters hired before January 1, 2006. The following steps shall be added to the existing longevity pay scale.

a.    After 24 years   $800
b.    After 30 years   $875
c.    Full-time Firefighters hired on or after January 1, 2006 shall receive longevity payments as follows:

| | |
|---|---|
| After 3 years | $125 |
| After 6 years | $225 |
| After 9 years | $325 |
| After 12 years | $425 |
| After 15 years | $525 |
| After 18 years | $625 |
| After 21 years | $725 |

Reproduced Record at 698a (R.R. ——). Section 164 of the Recovery Plan provides as follows:

> *Wages:* While under Act 47 the base hourly wages and salary increases, if granted, shall not exceed the lesser of the Consumer Price Index (CPI) for the northwest Pennsylvania region or 3%. Distribution of these moneys among the various bargaining units shall be fair and equitable and shall generally be in proportion to the actual 2002 costs incurred for each bargaining unit. Use of these moneys *could include one-time bonuses, wage adjustments or other means.* Whatever the terms of future collective bargaining agreements, arbitration awards, etc., no back wages or other retroactive adjustment shall be made.

R.R. at 173a–174a (emphasis added). The trial court concluded that the longevity payments provided in Section 4 of the Award "are not wages" but, rather, are "more akin to a bonus." Trial Court Opinion at 13.

The trial court's rationale cannot stand. The language emphasized in Section 164 of the Recovery Plan plainly includes "one-time bonuses, wage adjustments or other

---

1. Greenville also contends that Section 4 of the Award is inconsistent with Section 179 of the Recovery Plan, which prohibits new benefits or expansion of benefits that have uncapped future costs. For the reasons stated by trial court, I agree that Section 4 of the Award is consistent with Section 179 of the Recovery Plan because the longevity payments provided in Section 4 are, in fact, capped.

means" as payments within the 3 percent maximum wage increase. Because the longevity payments will result in a wage increase for the firefighters in excess of 3 percent, Section 4 of the Award is inconsistent with Section 164 of the Recovery Plan. I believe the trial court erred in not striking or modifying Section 4 of the Award.

Greenville also contends that Section 14 of the Award must be stricken or modified because the minimum manning requirements it imposes are inconsistent with the elimination of such requirements in Section 173 of the Recovery Plan. Again, I agree.

Section 14 of the Award provides as follows:

Staffing and Safety—Addendum A will be replaced with the following:

In order to insure the safety of the members of the Greenville Fire Department, the Borough will comply with the following staffing requirements:

*The Borough will maintain an apparatus staffing level,* excluding the Chief, of two (2) Firefighters during the term of this Agreement. No Greenville Fire Department fire-apparatus will respond to any fire suppression call from the station with fewer than two (2) Firefighters, either two Firefighters on one (1) piece of fire-fighting apparatus or one (1) Firefighter on each of two pieces of fire-fighting apparatus. The Borough may use a Relief Firefighter to fill one of the two Firefighter positions on occasions where

a full-time Firefighter utilizes vacation, sick, training or holiday leave, subject to the restrictions contained in the Relief Firefighter provision of this Award.

R.R. at 700a (emphasis added). Section 173 of the Recovery Plan provides as follows:

*Elimination of Minimum Manning:* Any provision of any collective bargaining agreement between the borough and any of its unions concerning minimum manning requirements for any particular bargaining unit, *shift,* platoon, *job classification, specialization, or position* shall be eliminated. *The borough shall have the sole right to determine the number of personnel employed and utilized by the borough.* Further, the borough shall have the right to layoff any employees for economic or any other reasons, without limitation.

R.R. at 176a (emphasis added). The trial court concluded because Section 173 does not contain the words "firefighting apparatus" it did not bar the Award's minimum manning requirements for a firefighting apparatus. I disagree with the trial court's unduly narrow interpretation of Section 173 of the Recovery Plan.

Staffing for a responding apparatus, such as a fire truck, is certainly part of a "shift" or "position" and, arguably, is a "specialization" or "job classification," and those terms are used in Section 173. Moreover, Section 173 provides Greenville with the exclusive right to determine the number of personnel employed and used by Greenville.[2] I believe the trial court

---

**2.** Section 241 of Act 47 permits a municipality to consider staffing level changes in a recovery plan, stating, in pertinent part, as follows:

... [A recovery plan] shall include any of the following factors which are relevant to

alleviating the financially distressed status of the municipality:

\* \* \*

(3) Possible changes in collective bargaining agreements and permanent and tem-

erred in not striking or modifying Section 14 of the Award.

I also write separately to address Local 1976's assertion that Greenville should be precluded from invoking Section 252 of Act 47 because it has done so in a haphazard fashion. Local 1976 contends that an arbitration award between Greenville and its police department resulted in Greenville agreeing to a program of medical benefits that violates the Recovery Plan. Accordingly, Local 1976 argues that Greenville should be estopped from seeking to strike the Award in this case as inconsistent with the Recovery Plan. Local 1976's argument lacks merit.

It is axiomatic that parties who have voluntarily negotiated and agreed to provisions in a collective bargaining agreement may not later attempt to avoid those provisions by claiming that they conflict with the law. *Grottenthaler v. Pennsylvania State Police*, 488 Pa. 19, 25, 410 A.2d 806, 809 (1980). However, this general rule does not extend to cases where a dispute is resolved by an arbitrator rather than through a collective bargaining agreement. *Municipality of Monroeville v. Monroeville Police Department Wage Policy Committee*, 767 A.2d 596 (Pa.Cmwlth.2001).[3]

Here, Greenville was forced by arbitration to give certain health insurance benefits to its police officers that were inconsistent with the Recovery Plan.[4] The health insurance provision was not voluntarily ne-

gotiated by the parties. Additionally, Greenville does not challenge the health care contribution provision of the Award; rather, Greenville challenges the illegality of the minimum manning provision of the Award. Unlike the provision pertaining to firefighters, there is no minimum manning provision for the police in the Recovery Plan. Therefore, Greenville is not estopped or precluded from claiming that Section 14 of the Award must be stricken or modified as inconsistent with Section 173 of the Recovery Plan.

Based on the foregoing, I would affirm the trial court's holding that Section 2 of the Award conflicted with the Recovery Plan and the trial court's revision of that section. I would reverse the trial court with respect to Sections 4 and 14 of the Award because they are inconsistent with Greenville's Recovery Plan.

President Judge LEADBETTER and Judge COHN JUBELIRER join in this concurring and dissenting opinion.

---

porary staffing level changes or changes in organization.

53 P.S. § 11701.241.

**3.** For example, in Monroeville, the parties were in the process of negotiating a new collective bargaining agreement when a dispute arose regarding whether municipal pension benefits could exceed those provided for in the statute. The dispute was submitted for arbitration. The arbitrator decided that, despite the fact that they were inconsistent with the statutorily defined benefits, the disputed

provisions could be included in the new collective bargaining agreement. This Court concluded that the municipality could challenge the illegality of the provision because it was part of the collective bargaining agreement not because of the parties' negotiation but by decision of the arbitrator.

**4.** An almost identical health care contribution provision was also awarded to Local 1976 in the Award.